IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
*Southern Division*

|  |  |  |
|---|---|---|
| DIANA VALLE, | * | |
| Plaintiff, | * | |
| v. | * | Case No.: GJH-19-2304 |
| WESTHILL EXCHANGE, LLC, | * | |
| Defendant. | * | |

\* \* \* \* \* \* \* \* \* \* \* \* \*

**MEMORANDUM OPINION**

Plaintiff Diana Valle filed this consumer protection action against Defendants Westhill Exchange, LLC ("Westhill") and NCB Management Services ("NCB") for alleged violations of the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. §§ 1692 *et seq.*, and Maryland laws. ECF No. 1. Defendant NCB was voluntarily dismissed from the action. ECF No. 16. Currently pending before the Court is Plaintiff's Motion for Partial Summary Judgment as to liability on Count 3, the FDCPA claim against Defendant Westhill,[1] ECF No. 17; Defendant Westhill's Cross-Motion for Summary Judgment, ECF No. 18; and Plaintiff's Motion for Leave to File Supplement to Opposition to Cross-Motion for Partial Summary Judgment, ECF No. 20.[2] No hearing is necessary. *See* Loc. R. 105.6 (D. Md. 2018). For the following reasons, Plaintiff's

---

[1] Although Plaintiff's Motion states that it seeks partial summary judgment as to liability on Count 2, ECF No. 17 at 1, based on the content of Plaintiff's Motion, as well as the fact that Count 2 contains allegations against Defendant NCB, while Count 3 contains allegations against Defendant Westhill, ECF No. 1 at 9–10, it appears Plaintiff intends to request summary judgment as to Count 3. Indeed, Plaintiff's Reply references Count 3. ECF No. 19 at 2.
[2] Plaintiff moved for leave to supplement her Opposition to include detailed citations and quotations from the deposition transcript of Defendant Westhill's 30(b)(6) representative, Tim Grant, as the transcript was not available at the time Plaintiff filed her Opposition. ECF No. 20. The Opposition contained references to the deposition testimony based on counsel's notes, *see* ECF No. 19, and Defendant was able to respond to the specific testimony cited in its Reply, which was filed six days after Plaintiff filed her proposed supplement, *see* ECF No. 21. Thus, Defendant was not prejudiced, and Plaintiff's motion is granted.

1

Motion for Partial Summary Judgment and Plaintiff's Motion for Leave are granted, and Defendant's Cross-Motion for Partial Summary Judgment is denied.

I.  **BACKGROUND**[3]

In October 2017, Plaintiff Diana Valle took out a payday loan of $2,072.18 from Republic Bank & Trust Company ("RB&T"), trading as Elastic. ECF No. 1 ¶¶ 1, 23; ECF No. 9 ¶ 1; ECF No. 1-1 at 7–8. Valle was subsequently unable to make payments on the account as they were due and went into default. ECF No. 1 ¶ 24; ECF No. 9 ¶ 1. Defendant Westhill is a third-party debt collector, ECF No. 18-2 ¶ 3, although it is not a licensed debt collector in the state of Maryland, ECF No. 1 ¶ 53; ECF No. 9 ¶ 1. On April 18, 2018, Defendant Westhill entered into a Collection Service Agreement with ARI & Associates ("ARI") to collect 52 loan accounts that ARI had purchased from RB&T, including 29 payday loans made by RB&T trading as Elastic. ECF No. 18-2 ¶¶ 3–4, 6; ECF No. 17-2; ECF No. 18-3. One of these accounts was the $2,072.18 payday loan to Plaintiff. ECF No. 18-2 ¶¶ 4, 6; *see also* ECF No. 18-3. ARI provided account information for this loan, among the others, including the original lender name, debtor name (although misspelled), address, charge-off balance, account number, and current balance. ECF No. 18-3 at 9–10; *see also* ECF No. 18-2 ¶ 5. However, other information—including a telephone number, last payment date, last payment amount, and social security number—were not provided for this account despite being provided for the other accounts in the portfolio. ECF No. 20-2 at 13 (Defendant Westhill president's testimony); ECF No. 18-3 at 9–10 (Intake Account form for Plaintiff's loan); *but see* ECF No. 18-2 ¶ 5 (Defendant Westhill president's affidavit stating that ARI provided a telephone number and last payment date for all of the accounts).

---

[3] These facts are either undisputed or viewed in the light most favorable to the non-moving party. *See Rossignol v. Voorhaar*, 316 F.3d 516, 523 (4th Cir. 2003); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

In April 2018, Cash Management Services, a third-party debt settlement company retained by Plaintiff, reached out to Defendant Westhill regarding Plaintiff's debt. *See* ECF No. 17-3 ¶¶ 3–4; ECF No. 17-6; ECF No. 18-2 ¶ 6. Defendant Westhill said that it was collecting the debt on behalf of ARI, and, after getting ARI's approval, negotiated a payment plan to settle and compromise the loan—$1,444.45, payable in monthly installments of $144.44 beginning May 12, 2018. *See* ECF No. 17-7; ECF No. 18-2 ¶¶ 6–7; ECF No. 17-3 ¶ 5. Plaintiff and Defendant Westhill entered into a settlement agreement according to those terms on May 4, 2018. ECF No. 17-7.

On June 15, 2018, Plaintiff received a call from Defendant NCB demanding payment of the loan. ECF No. 17-3 ¶ 7. She believed the call was a mistake and demanded proof that Defendant NCB was entitled to collect. *Id.* On August 14, 2018, Plaintiff received an email from Elastic stating that the loan had been sold to Defendant NCB. ECF No. 17-8 at 1–2. In December 2018, Plaintiff received another call from Defendant NCB demanding payment of the loan. ECF No. 17-3 ¶ 8.

On February 17, 2019, Valle requested that Defendant Westhill provide verification that it had purchased the loan. ECF No. 17-8 at 1. She explained that she was filing suit against Defendant NCB and wanted to "be prepared for litigation." *Id.* On February 19, 2019, Tim Grant, Defendant Westhill's president, responded, "[w]e are working the debt on contingency ... but I can send you the verification." *Id.* (ellipses in original). Plaintiff followed up on March 13, 2019, asking, "[c]an you please send me the verification?" ECF No. 17-9 at 4. On April 1, 2019, she emailed him again, stating, "I also wanted to follow up on my request for the verification documentation . . . . Do you have an update on when I will receive the verification? I am getting a little concerned." *Id.* Mr. Grant responded on April 4, 2019, stating, "[w]e spoke to our client

3

and they said that the contract is still pending in their system, but the moment they get it they have informed us that they will mail it directly to you . . . . If you don't have it in a couple of weeks, please let me know." *Id.* at 2.

Plaintiff then received a letter from Defendant NCB containing documentation concerning her request for validation of the debt. ECF No. 17-12. On April 29, 2019, Plaintiff contacted Mr. Grant to inform him that she had received the debt validation letter from Defendant NCB but had not received any documentation from Defendant Westhill. ECF No. 17-9 at 1–2. It appears that Mr. Grant misunderstood the validation she had received as being sent from Defendant Westhill, as he stated, "OK, that's a start, not quite sure why they sent that, we requested that they sen[d] the actual agreement." *Id.* at 1. In the same email, he told her, "I am sorry this is dragging on so long, if we cannot get resolution shortly, I will seek to just refund you on this account and forward everything back to our client." *Id.*

Plaintiff completed her payments to Defendant Westhill on April 2, 2019, and received a release of liability informing her that the account was closed. ECF No. 17-11; ECF No. 17-9 at 2 (email from Mr. Grant "attach[ing] a copy of the paid letter" to "keep for [her] personal records"). Mr. Grant states that shortly after Plaintiff completed her payments, Defendant Westhill attempted to wire transfer the funds to ARI, but ARI's bank account was closed. ECF No. 18-2 ¶ 15. Defendant Westhill then attempted to contact ARI by telephone, but the line had been disconnected. *Id.* An attempted in-person visit to ARI's office revealed that it was closed. *Id.*

On August 12, 2019, Plaintiff filed suit against Defendants NCB and Westhill. ECF No. 1. On August 28, 2019, Mr. Grant emailed an individual at ARI "about a complaint" regarding "ARI collecting on debt not assigned to them." ECF No. 17-10.

4

Defendant Westhill answered the Complaint on November 18, 2019, ECF No. 9, and the parties began discovery, *see* ECF No. 14. On May 13, 2020, Plaintiff voluntarily dismissed Defendant NCB from the action pursuant to a settlement agreement. ECF No. 16; *see* ECF No. 18-1 at 1. On July 6, 2020, Plaintiff moved for partial summary judgment as to liability on Count 3, her FDCPA claim against Defendant Westhill. ECF No. 17. Defendant Westhill filed a Cross-Motion for Partial Summary Judgment and Opposition to Plaintiff's Motion on July 20, 2020. ECF No. 18. Plaintiff filed an opposition to Defendant's Cross-Motion and reply in support of her motion on August 3, 2020, ECF No. 19, and moved for leave to supplement that response, adding citations to a newly available deposition transcript, on August 11, 2020, ECF No. 20. Defendant filed a reply in support of its motion on August 17, 2020. ECF No. 21.

## II.     STANDARD OF REVIEW

Summary judgment is proper if there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (citing Fed. R. Civ. P. 56(c)); *Francis v. Booz, Allen & Hamilton, Inc.*, 452 F.3d 299, 302 (4th Cir. 2006). A material fact is one "that might affect the outcome of the suit under the governing law." *Spriggs v. Diamond Auto Glass*, 242 F.3d 179, 183 (4th Cir. 2001) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). A dispute of material fact is only "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248–49. However, the nonmoving party "cannot create a genuine issue of material fact through mere speculation or the building of one inference upon another." *Beale v. Hardy*, 769 F.2d 213, 214 (4th Cir. 1985). The Court may only rely on facts supported in the record, not simply assertions in the pleadings, in order to fulfill its "affirmative obligation . . . to prevent 'factually unsupported claims or defenses' from proceeding to trial." *Felty v.*

5

*Graves-Humphreys Co.*, 818 F.2d 1126, 1128 (4th Cir. 1987) (quoting *Celotex*, 477 U.S. at 323–24).

Cross-motions for summary judgment require that the Court consider "each motion separately on its own merits 'to determine whether either of the parties deserves judgment as a matter of law.'" *Rossignol v. Voorhaar*, 316 F.3d 516, 523 (4th Cir. 2003) (quoting *Philip Morris Inc. v. Harshbarger*, 122 F.3d 58, 62 n. 4 (1st Cir. 1997)). "When considering each individual motion, the court must take care to 'resolve all factual disputes and any competing, rational inferences in the light most favorable' to the party opposing that motion." *Id.* (quoting *Wightman v. Springfield Terminal Ry. Co.*, 100 F.3d 228, 230 (1st Cir. 1996)). "The Court must deny both motions if it finds a genuine issue of material fact, 'but if there is no genuine issue and one or the other party is entitled to prevail as a matter of law, the court will render judgment.'" *Wallace v. Paulos*, No. DKC 2008-0251, 2009 WL 3216622, at *4 (D. Md. Sept. 29, 2009) (citation omitted).

**III.    DISCUSSION**

The FDCPA seeks "to eliminate abusive debt collection practices by debt collectors." 15 U.S.C. § 1692(e). To succeed on an FDCPA claim, "a plaintiff must demonstrate that '(1) the plaintiff has been the object of collection activity arising from consumer debt, (2) the defendant is a debt collector as defined by the FDCPA, and (3) the defendant has engaged in an act or omission prohibited by the FDCPA.'" *Long v. Pendrick Cap. Partners II, LLC*, 374 F. Supp. 3d 515, 531 (D. Md. 2019) (quoting *Stewart v. Bierman*, 859 F. Supp. 2d 754, 759 (D. Md. 2012)). The parties do not dispute that Plaintiff has been the object of collection activity arising from consumer debt and that Defendant is a debt collector. Thus, the only issue is whether Plaintiff has sufficiently established that Defendant engaged in conduct prohibited by the FDCPA.

Here, Plaintiff alleges that Defendant violated Section 1692e of the FDCPA. ECF No. 1 ¶ 74. Section 1692e prohibits the use of "any false, deceptive, or misleading representation or means in connection with the collection of any debt." 15 U.S.C. § 1692e. Section 1692e contains sixteen subsections detailing particular actions that run afoul of this provision. *See id.* However, "[b]ecause the list in the sixteen subsections is non-exhaustive, a debt collection practice can be a 'false, deceptive, or misleading' practice in violation of § 1692e even if it does not fall within any of the subsections of § 1692e." *Clomon v. Jackson*, 988 F.2d 1314, 1318 (2d Cir. 1993).

Whether a statement is false is a relevant consideration when determining whether it violates § 1692e, but in the end is neither necessary nor sufficient—not necessary because, even where a "statement may be literally true, in some cases 'the literal truth may convey a misleading impression' that violates § 1692e," *McMillan v. Collection Profs. Inc.*, 455 F.3d 754, 761 (7th Cir. 2006) (quoting *Gammon v. GC Servs. Ltd. P'ship*, 27 F.3d 1254, 1258 (7th Cir. 1994) (Easterbrook, J., concurring)), and not sufficient because, even if a statement is false, it must also be materially misleading, *see Powell v. Palisades Acquisition XVI, LLC*, 782 F.3d 119, 126 (4th Cir. 2014); *Donohue v. Quick Collect, Inc.*, 592 F.3d 1027, 1033 (9th Cir. 2010); *Hahn v. Triumph Partnerships LLC*, 557 F.3d 755, 758 (7th Cir. 2009).[4] "In assessing FDCPA liability," courts are "not concerned with mere technical falsehoods that mislead no one.'" *Donohue*, 592 F.3d at 1034.

To determine whether a statement was materially misleading, the Fourth Circuit looks to the "least sophisticated consumer" standard. *Stewart v. Bierman*, 859 F. Supp. 2d 754, 761 (D.

---

[4] Courts have found materiality to be a prerequisite for a statement to be misleading. *See, e.g.*, *Powell*, 782 F.3d at 126 (4th Cir. 2014); *Miller v. Javitch, Block & Rathbone*, 561 F.3d 588, 596 (6th Cir. 2009); *Hahn*, 557 F.3d at 758 ("A statement cannot mislead unless it is material, so a false but non-material statement is not actionable."); *Donohue*, 592 F.3d at 1033 ("We now conclude that false but non-material representations are not likely to mislead the least sophisticated consumer and therefore are not actionable").

7

Md. 2012) (citing *United States v. Nat'l Fin. Servs., Inc.*, 98 F.3d 131, 135–36 (4th Cir. 1996)). Under that standard, the statements must "frustrate" the least sophisticated consumer's "ability to intelligently choose his or her response," *Powell*, 782 F.3d at 127 (quoting *Donohue*, 592 F.3d at 1033), and thus be "important in the sense that they could objectively affect the least sophisticated consumer's decisionmaking," *id.* Additionally, "the test is the capacity of the statement to mislead; evidence of actual deception is unnecessary." *Nat'l Fin. Servs., Inc.*, 98 F.3d at 139.

"The FDCPA is 'a strict liability statute' and, thus, there is no need for a plaintiff to plead or prove that a debt collector's misrepresentation of a debt obligation was intentional." *Vangorden v. Second Round, Ltd. P'ship*, 897 F.3d 433, 437–38 (2d Cir. 2018) (citing *Arias v. Gutman, Mintz, Baker & Sonnenfeldt LLP*, 875 F.3d 128, 134 (2d Cir. 2017)).[5] "Debt collectors may not make false claims, period." *Randolph v. IMBS, Inc.*, 368 F.3d 726, 730 (7th Cir. 2004). Thus, a debt collector may violate § 1692e even if it unintentionally makes a false statement. *Turner v. J.V.D.B. & Assocs., Inc.*, 330 F.3d 991, 995 (7th Cir. 2003) ("[U]nder § 1692e ignorance is no excuse."); *Russell v. Equifax A.R.S.*, 74 F.3d 30, 33 (2d Cir. 1996) ("[A] consumer need not show intentional conduct by the debt collector to be entitled to damages."); *but cf. Randolph*, 368 F.3d at 730 ("In lieu of a scienter requirement, the FDCPA provides a defense 'if the debt collector shows by a preponderance of evidence that the violation was not intentional and resulted from a bona fide error notwithstanding the maintenance of procedures reasonably adapted to avoid any such error.'" (quoting 15 U.S.C. § 1692k(c))).[6] Additionally, "a single violation of section 1692e is sufficient to establish civil liability under the FDCPA."

---

[5] *Cf. LeBlanc v. Unifund CCR Partners*, 601 F.3d 1185, 1192 n.12 (11th Cir. 2010) ("In contrast to the FDCPA, Section 559.72(9) of the FCCPA requires a plaintiff to demonstrate that the debt collector defendant possessed *actual knowledge* that the threatened means of enforcing the debt was unavailable." (emphasis original)).

[6] Defendant Westhill has not asserted a bona fide error defense in this case.

8

*Bentley v. Great Lakes Collection Bureau*, 6 F.3d 60, 62 (2d Cir. 1993); *see also Long*, 374 F. Supp. 3d at 531.

In her Motion for Partial Summary Judgment, Plaintiff asserts three theories under which she alleges Defendant Westhill violated § 1692e of the FDCPA: (1) that Defendant Westhill collected on a debt without authority; (2) that Defendant Westhill made false representations to prevent Plaintiff from discovering that it had no right to collect the debt; and (3) that Defendant Westhill violated the FDCPA by collecting in Maryland without a license. ECF No. 17-1 at 8–11.[7] The Court considers each in turn.

### A. Collecting Debt Not Owned

Plaintiff first asserts that Defendant Westhill made false and misleading representations that it had the authority to collect the debt in violation of 15 U.S.C. § 1692e. ECF No. 17-1 at 8–9. Specifically, Plaintiff points to Defendant Westhill's entering into a settlement agreement with Plaintiff, its representation to Plaintiff that it was "working the debt on contingency," and its provision of a letter purporting to show that the creditor under the Elastic Loan had released Plaintiff from liability as false and misleading representations given that Defendant Westhill did not, according to Plaintiff, have authority to collect the debt. *Id.* at 8.

---

[7] In Count 3 of the Complaint, Plaintiff alleges only that "Westhill violated 15 U.S.C. § 1692e by using a false or misleading representation to collect a debt, in that it attempted to collect a debt from Valle knowing that it was not licensed in Maryland and therefore prohibited from collecting debts in the state of Maryland." ECF No. 1 ¶ 74. The first and second theories thus go beyond what was alleged in the Complaint. Generally, a party is not permitted to amend its complaint through a motion for summary judgment. *See Cloaninger ex rel. Est. of Cloaninger v. McDevitt*, 555 F.3d 324, 336 (4th Cir. 2009). However, Plaintiff alleged the facts underlying the new theories in the Complaint —she alleges that "Westhill misrepresented to Valle its authority to enter into a settlement of the account," ECF No. 1 ¶ 43, that "Westhill sought to enforce a right to collect the debt, which, on information and belief, it did not have due to the sale of the debt to NCB," *id.* ¶ 80, and that "Westhill . . . used false or misleading written statements to collect the debt from Valle, namely falsely implying that it had authority to collect and to enter into a settlement agreement and continue to take payment under the agreement when it had no such authority," *id.* ¶ 83—and she includes these allegations in her state law claims against Defendant Westhill under the MDCPA and MCPA, *see id.* ¶¶ 80, 83. Thus, Defendant had fair notice of the theories now asserted, and there was substantial discovery on the relevant facts. Additionally, Defendant engages with the new theories in its Cross-Motion for Summary Judgment and does not oppose their inclusion in Plaintiff's Motion. Accordingly, the Court finds it appropriate to consider all three theories.

Plaintiff argues that Defendant Westhill lacked the authority to collect the debt on the basis that RB&T, its original owner, sold the debt to Defendant NCB on June 25, 2020, and therefore Defendant Westhill could not have owned the debt on and after April 24, 2018, when it made the above-listed representations to Plaintiff. ECF No. 17-7; ECF No. 17-8; ECF No. 17-3 ¶ 10. As evidence, Plaintiff provides the debt validation letter from Defendant NCB, which contains the transaction history for her account as well as the assignment and bill of sale for a portfolio of accounts "identified on the Sale File" delivered in electronic file form and titled "20180620_Debt Sale – NCB Group A .txt." ECF No. 17-12.[8] However, as Defendant Westhill points out, *see* ECF No. 21 at 2, the letter does not include the Sale File showing that Plaintiff's account was part of the purchased portfolio. Indeed, Plaintiff said in an email to Mr. Grant on April 29, 2019, that she did not believe the verification to be complete. ECF No. 17-9 at 1.

Defendant Westhill, in an attempt to dispute Plaintiff's assertion that it lacked the authority to collect Plaintiff's debt, points to the information that it received about Plaintiff's account—including the original lender name, debtor name (although misspelled), address, charge-off balance, account number, and current balance, ECF No. 18-3 at 9–10—arguing that "[t]his Court may reasonably infer that ARI could have obtained specific and accurate account information needed to collect the Republic loans . . . only if Republic had either sold the loan portfolio to ARI, or had otherwise authorized ARI to collect loans in the portfolio." ECF No. 18-1 at 7. However, in his deposition, Westhill's president, Mr. Grant, acknowledged that some information provided for the other accounts in the portfolio—including a telephone number, last payment date, last payment amount, and social security number—was not provided for Plaintiff's

---

[8] Plaintiff also provides an email from Elastic stating that her account had been sold to NCB. ECF No. 17-8 at 1–2. However, this email is inadmissible hearsay and thus may not be considered at the summary judgment stage. *See Maryland Highways Contractors Ass'n, Inc. v. State of Md.*, 933 F.2d 1246, 1251 (4th Cir. 1991).

account. ECF No. 20-2 at 13. Defendant Westhill further relies on an affidavit from Mr. Grant that states:

> It is not uncommon for sellers of consumer debt portfolios to place the same portfolio with more than one buyer at the same time. One way this occurs is when the seller places a portfolio with one or more buyers on contingency. In this arrangement, the buyer is given an opportunity to collect loans in the portfolio, but has the right to return the portfolio to the seller if the buyer is not satisfied with the results of its collection efforts.

ECF No. 18-2 ¶ 16. Thus, Defendant Westhill concludes Republic could have sold the loan to both Defendant NCB and ARI, meaning the sale to Defendant NCB "does not justify the conclusion Republic did not also sell the Loan to ARI." ECF NO. 18-1 at 6. Notably, however, Mr. Grant does not say this is what happened; he says this is what *could* have happened. Defendant Westhill does not point to any evidence that it, in fact, had authority to collect the debt at the time it did so.

To the contrary, when asked during his deposition whether, "looking at this now and with the benefit of hindsight, [he] still believe[d] that ARI was the genuine owner of the debt," Mr. Grant replied, "[n]o. Absolutely not." ECF No. 20-2 at 18. Notably, Mr. Grant gave this answer as a 30(b)(6) witness, testifying on behalf of Defendant Westhill, *see id.* at 2; thus, this is an acknowledgement made by Defendant Westhill, *see* Fed. R. Civ. Pro. Rule 30(b)(6) ("The named organization must then designate one or more officers, directors, or managing agents, or designate other persons who consent to testify on its behalf."). Given Westhill's acknowledgement that it does not believe ARI owned the debt, as well as the other evidence that RB&T still owned the debt at the time Plaintiff made her payments to Defendant Westhill, Plaintiff has sufficiently shown that Defendant Westhill lacked authority to collect the debt. Additionally, Defendant Westhill's misrepresentation that it did have that authority would have affected the least sophisticated consumer's decision-making with respect to the debt, meaning it

11

was "materially misleading." *See Powell v. Palisades Acquisition XVI, LLC*, 782 F.3d 119, 126 (4th Cir. 2014). Plaintiff has thus established that Defendant Westhill violated § 1692e through its representations in connection with the collection of the debt without proper authority.[9] Accordingly, summary judgment is granted in Plaintiff's favor as to liability on Count 3.

### B. Attempts to Confirm Ownership of Debt

Plaintiff next argues that Defendant Westhill violated § 1692e by making false representations to Plaintiff that it was working to confirm ownership of the debt when it was not, and that Defendant made these representations in order to prevent her from discovering that it had no right to collect the debt. ECF No. 17-1 at 9–10. Plaintiff argues Defendant Westhill's representations would have necessarily affected the least sophisticated consumer's response to Defendant Westhill's collection activity, as "had Westhill admitted that its client had not responded on the issue of ownership, a reasonable consumer might well have stopped paying Westhill and instead believed NCB's claim of ownership, rather than giving Westhill more time to produce evidence of its right to collect." *Id.* at 10.

---

[9] *Cf., e.g., Russell v. Absolute Collection Servs., Inc.*, 763 F.3d 385, 395 (4th Cir. 2014) (finding that a debt collector's letter stating that the plaintiff's account had not been satisfied, when it had been paid in full, misrepresented the character or legal status of her debt in violation of 15 U.S.C. § 1692e(2)(A)); *Richardson v. Midland Funding, LLC*, No. CIV. CCB-13-1356, 2013 WL 6719110, at *4 (D. Md. Dec. 18, 2013), *aff'd*, 583 F. App'x 124 (4th Cir. 2014) ("[I]f a debt collector files suit with misleading documents or documents containing actual falsities or misrepresentations concerning the debt, it likely does engage in conduct that violates the FDCPA."); *Harvey v. Great Seneca Fin. Corp.*, 453 F.3d 324, 332 (6th Cir. 2006) (finding the plaintiff had not alleged a violation of § 1692e(10) where the plaintiff "never denied in her complaint that she owed [the defendant] a debt, nor did she claim that [the defendants] misstated or misrepresented the amount that she owed"); *Kasalo v. Trident Asset Mgmt., LLC*, 53 F. Supp. 3d 1072, 1086 (N.D. Ill. 2014) (granting summary judgment finding a violation of § 1692e(2)(A) where the evidence shows that the defendant sent the plaintiff a letter stating it had purchased his account, but the defendant admitted it did not own the account at the time); *Cox v. Hilco Receivables, L.L.C.*, 726 F. Supp. 2d 659, 665–66 (N.D. Tex. 2010) ("[A] letter falsely stating that Hilco is owed Cox's debt, sent in order to collect on that debt, clearly qualifies as the use of a false representation or deceptive means to collect or attempt to collect any debt in violation of § 1692e(10)."); *Nickoloff v. Wolpoff & Abramson, L.L.P.*, 511 F. Supp. 2d 1043, 1045 (C.D. Cal. 2007) (finding the complaint alleged only that the defendant "did not produce adequate documentary evidence to prove that it owned the debt"—and granting judgment on the pleadings "[b]ecause [the plaintiff] does not allege that [the defendant] did not actually own the debt at the time it brought the arbitration claim").

Plaintiff first requested that Defendant Westhill provide verification that it had purchased the loan on February 17, 2019. ECF No. 17-8 at 1. Mr. Grant responded on February 19, 2019, "[w]e are working the debt on contingency ... but I can send you the verification." *Id.* (ellipses in original). Plaintiff followed up on March 13, 2019, and again on April 1, 2019. ECF No. 17-9 at 4. Plaintiff completed her payments on April 2, 2019, and received a release of liability informing her that the account was closed. ECF No. 17-11; ECF No. 17-9 at 2. On April 4, 2019, Mr. Grant told Plaintiff, "[w]e spoke to our client and they said that the contract is still pending in their system . . . . I will contact them for updates." *Id.* at 2. Finally, on April 30, 2019, in response to Plaintiff's email concerning the validation from Defendant NCB, Mr. Grant told her, "I will reach out to our client and talk to them about this more in detail." ECF No. 17-9 at 1. In his affidavit, Mr. Grant states that "[s]hortly after" Plaintiff completed her payments, Defendant Westhill realized—after attempting to wire transfer the funds to ARI, attempting to contact ARI by telephone, and visiting ARI's office—that ARI had closed. ECF No. 18-2 ¶ 15.

Based on these facts, Plaintiff has not established that Defendant Westhill made false and misleading misrepresentations "conceal[ing] the fact that ARI had simply not responded when Westhill questioned its ownership of the debt." ECF No. 17-1 at 10. Specifically, it is not clear from the record that Defendant Westhill was not, in fact, working to confirm ownership of the debt or that ARI was nonresponsive when Defendant Westhill made the above statements to Plaintiff. Indeed, Mr. Grant stated in an email sent April 4, 2019, that Defendant Westhill had spoken to ARI, and he states in his affidavit that Defendant Westhill did not realize ARI had closed until sometime after Plaintiff completed her payments. ECF No. 18-2 ¶¶ 12, 15; ECF No. 18-7. Plaintiff has not refuted those assertions or challenged their validity, and thus it appears that, at least at the time of the statements made before and on April 4, Defendant Westhill was in

contact with ARI. Regarding the later April 30 email, Mr. Grant does not state when exactly Defendant Westhill became aware of ARI's closure, so it remains unclear whether this happened before or after he told Plaintiff that he would reach out to ARI about the validation. Additionally, given that he corresponded with an ARI employee in August 2019, ECF No. 17-10, it seems ARI became responsive again at some point, but the record does not show when that happened. Given these remaining factual questions, Plaintiff has not sufficiently shown that Defendant Westhill's representations that it was working to confirm ownership of the debt were false or misleading, precluding summary judgment on Plaintiff's second theory.

### C. Unlicensed Collection

Finally, Plaintiff alleges in her Complaint and argues in her Motion for Summary Judgment that Defendant Westhill violated the FDCPA by collecting debt in Maryland while unlicensed in violation of the Maryland Collection Agency Licensing Act ("MCALA"). ECF No. 1 ¶ 74; ECF No. 17-1 at 10–11. The MCALA requires licensure whenever "do[ing] business as a collection agency in the State." Md. Code Ann., Bus. Reg. § 7-301(a). A "collection agency" includes a "person who engages directly or indirectly in the business of . . . collecting for, or soliciting from another, a consumer claim." *Id.* § 7-101(d). The parties do not appear to contest that Defendant Westhill's conduct violated the MCALA. However, they disagree about whether that violation of state law also violates the FDCPA.

Courts have divided over whether a violation of MCALA's licensing requirements (or other states' parallel laws) constitutes a *per se* FDCPA violation. *Compare LeBlanc v. Unifund CCR Partners*, 601 F.3d 1185, 1192 (11th Cir. 2010) (finding that a state law violation does not constitute a *per se* FDCPA violation but that the defendant may have violated 15 U.S.C. § 1692e(5) when it threatened to bring a lawsuit against the plaintiff), *Wade v. Reg'l Credit Ass'n*,

87 F.3d 1098, 1100 (9th Cir. 1996) (holding that the defendant's attempts to collect, "although apparently in violation of state law, were innocuous and not in violation of the FDCPA" because they did not threaten to sue, and thus did not violate §§ 1692e, 1692e(5), or 1692e(10)), *and Niemiec v. NCO Fin. Sys., Inc.*, No. 1:05cv219, 2006 WL 1763643, at *9 (N.D. Ind. June 27, 2006) (finding possible violation of Indiana law did not also violate the FDCPA); *with Russey v. Rankin*, 911 F. Supp. 1449, 1459 (D.N.M. 1995) (finding the defendant violated 15 U.S.C. §§ 1692e, 1692e(5), 1692e(10) and 1692f by engaging in collection activity without a license and noting "this district has held that collection activity which violates state law violates the FDCPA"), *Sibley v. Firstcollect, Inc.*, 913 F. Supp. 469, 471 (M.D. La. 1995) ("[A] debt collector who has not been properly licensed by the state in which it attempted to collect a debt has violated Section 1692e(5) of the FDCPA."), *Kuhn v. Account Control Tech., Inc*, 865 F. Supp. 1443, 1452 (D. Nev. 1994) (holding that "acting as a collection agency without being licensed by the proper state authority" violated §§ 1692e(5), 1692e(10), and 1692f), *and Gaetano v. Payco of Wisconsin, Inc.*, 774 F. Supp. 1404, 1414 (D. Conn. 1990) (finding violations of § 1692e(5) and § 1692f where the defendant "demand[ed] payment and stat[ed] that it intended to use all means at its disposal to collect and to enforce the debt (in other words, threatening to collect the debt)").

    Courts in this district have sided with those finding that, while a violation of MCALA's licensing requirement may support a cause of action under the FDCPA, it will not amount to a *per se* FDCPA violation. *See Bradshaw v. Hilco Receivables, LLC*, 765 F. Supp. 2d 719, 727–28 (D. Md. 2011); *Grant-Fletcher v. Brachfeld L. Grp., PC*, No. CIV. WMN-11-2072, 2012 WL 2523094, at *6 (D. Md. June 28, 2012). An MCALA violation becomes actionable only if it facilitates the violation of a specific FDCPA subsection—for example, if a debt collector

threatens to sue a debtor where, because it is unlicensed, the collector cannot legally take that action, violating § 1692e(5). *See Reyes v. Manchester Gardens Condo.*, No. 8:19-CV-02643-PX, 2020 WL 3791964, at *6 (D. Md. July 7, 2020); *LeBlanc*, 601 F.3d at 1192.

Plaintiff's Complaint asserts that "Westhill violated 15 U.S.C. § 1692e by using a false or misleading representation to collect a debt, in that it attempted to collect a debt from Valle knowing that it was not licensed in Maryland and therefore prohibited from collecting debts in the state of Maryland." ECF No. 1 ¶ 74. In Plaintiff's Opposition to Defendant's Motion for Partial Summary Judgment and Reply in Support of Plaintiff's Motion for Partial Summary Judgment, she changes tack, arguing for the first time that Defendant, through its unlicensed collection activity, violated additional subsections of the FDCPA: 15 U.S.C. §§ 1692e, 1692e(5), 1692e(10), 1692d(1). ECF No. 19 at 6. Because §§ 1692e(5) and 1692d(1) are sufficiently distinguishable from § 1692e, they need not be considered. *See Harris v. Reston Hosp. Ctr. LLC*, 523 F. App'x 938, 946 (4th Cir. 2013); *see also Green Country Food Mkt., Inc. v. Bottling Grp., LLC*, 371 F.3d 1275, 1279–80 (10th Cir. 2004) (finding the plaintiff could not move for summary judgment based on a newly mentioned subsection where a claim brought under that subsection was "sufficiently distinguishable" from a claim brought under the subsection specified in the complaint); *Douyon v. N.Y. Med. Health Care, P.C.*, 894 F. Supp. 2d 245, 257 (E.D.N.Y. 2012), *order amended on reconsideration*, No. CV 10-3983 AKT, 2013 WL 5423800 (E.D.N.Y. Sept. 25, 2013) (finding the plaintiff is not entitled to summary judgment on a claim under § 1692c(b) where the complaint brings claims under § 1692c(a)(2) and/or § 1692d(6)).

Moreover, even were the Court to consider whether Defendant Westhill violated these additional subsections, Plaintiff has failed to show a violation under either one. First, Plaintiff argues that, because MCALA makes knowing and willful unlicensed debt collection a

misdemeanor, *see* Md. Code Ann., Bus. Reg. §7-401, and thus "collection activity in Maryland by ARI was criminal, Defendant Westhill violated the FDCPA's prohibition on using criminal means to collect a debt" in violation of § 1692d(1). ECF No. 19 at 6–7. Section 1692d prohibits "any conduct the natural consequence of which is to harass, oppress, or abuse any person in connection with the collection of a debt." 15 U.S.C. § 1692d. The section provides a non-exhaustive list of actions that would amount to such prohibited conduct, the first of which is "[t]he use or threat of use of violence or other criminal means to harm the physical person, reputation, or property of any person." *Id.* § 1692d(1). The evidence offered does not suggest Defendant Westhill used violence or other criminal means to cause Plaintiff physical or reputational harm or otherwise engaged in conduct amounting to harassment, oppression, or abuse, and therefore it does not show that Defendant Westhill violated § 1692d(1). *See, e.g.*, *Jennings v. Dynamic Recovery Sols. LLC*, 441 F. Supp. 3d 106, 111 (D. Md. 2020) ("Plaintiff makes no argument, however, as to how the Letter constitutes harassment, oppression, or abuse, and the Court can conceive of no theory under which a single letter that contains no threats or profane language could rise to the level of a § 1692d violation."). Mere unlicensed debt collection does not fall within the bounds of § 1692d(1).

      Similarly, Plaintiff has not alleged or shown that Defendant Westhill threatened to take action it was not legally able to take, such as filing a state court collection complaint, and thus has not shown Defendant Westhill violated § 1692e(5). *See Grant-Fletcher*, 2012 WL 2523094, at *6 ("In the present case, however, the faxed letter did not threaten legal action, and would be viewed by the "least sophisticated debtor" as a reminder and not as a threat. The letter contain[s] no reference, either direct or implicit, to suit, lawsuit, legal action, or litigation." (internal quotation marks and citations omitted)).

Therefore, the Court confines its inquiry to whether Defendant Westhill's actions while unlicensed amount to a violation of §§ 1692e and 1692e(10).[10] The Court is not aware of authority evaluating whether entering into a settlement agreement and collecting debt while unlicensed violates §§ 1692e and 1692e(10). Several cases involving *attempts* to collect—specifically, sending collection notices informing a debtor of unpaid debt and instructing the debtor to contact the collector to make payment—have distinguished between a "defendant's failure to register with the state department as required by state law and an affirmative falsehood," *Radaj v. ARS Nat. Servs., Inc.*, No. 05-C-0773, 2006 WL 2620394, at *3 (E.D. Wis. Sept. 12, 2006), finding the latter is required to violate the FDCPA.[11] *See, e.g.*, *Wade*, 87 F.3d at 1100 (finding no violation of §§ 1692e or 1692e(10) where a debt collection notice did not make a false representation that the collector had the power to collect in Idaho); *Ferguson v. Credit Mgmt. Control, Inc.*, 140 F. Supp. 2d 1293, 1303 (M.D. Fla. 2001) (finding no § 1692e(10) violation where the defendant did not state that it had the power to collect debts in Florida or indicate it was licensed in Florida in a collection notice); *Thibodeau v. Credit Adjustment Bureau*, No. 806CV-509T-26MAP, 2006 WL 3498159, at *2 (M.D. Fla. Dec. 4, 2006) (same result even where the notice threatened to report "his unpaid account as an unpaid collection item on his credit bureau file"); *cf. Radaj*, 2006 WL 2620394, at *1–3 (finding the plaintiff alleged a § 1692e claim where the collector sent letters falsely stating it was "licensed by the Office of the Administrator of the Division of Banking of the state of Wisconsin" (internal quotation marks

---

[10] Although §1692e(10) was not named in the Complaint, the Court considers §1692e(10) jointly with §1692e given their substantial overlap. *Cf. Green Country Food Mkt.*, 371 F.3d at 1279–80.

[11] *But see Veras v. LVNV Funding, LLC*, No. CIV. 13-1745 RBK/JS, 2014 WL 1050512, at *5 (D.N.J. Mar. 17, 2014) ("[I]t would strain logic to conclude that if a debt collector is prohibited from engaging in debt collection activity in a state, he avoids the risk of liability under the FDCPA so long as he conceals this fact and does not make any representation that he actually has debt collection authority. . . . Plaintiff's allegation that Defendants attempted to collect Plaintiff's debt in contravention of the NJCFLA is sufficient to at least support his claim under section 1692e(10).").

omitted)); *Czerwinski v. Risk Mgmt. Alternatives Int'l Corp. Canada*, No. 05 C 0945, 2006 WL 897768, at *1 (E.D. Wis. Apr. 4, 2006) (same).

Although Defendant Westhill's "conduct reaches far beyond a notice presenting information," *Wyche v. Tsarouhis*, 385 F. Supp. 3d 392, 399 (E.D. Pa. 2019), the Court is mindful of the delineation underlying these cases. Merely alleging that the defendant violated the MCALA is insufficient. The focus of §§ 1692e and 1692e(10) is not on the defendant's status as a licensed debt collector, but instead on whether the defendant actually *misrepresented* that status. In the cases listed above, courts found that sending a collection notice lacking an affirmative statement that the collector was licensed did not to amount to a material misrepresentation actionable under §§ 1692e and 1692e(10). But here, Defendant Westhill entered into a settlement agreement with Plaintiff, collected her debt until the balance was paid off, and corresponded with her throughout that time period concerning the payment and verification of her debt. While it did not affirmatively state it was licensed in Maryland, unlike sending a collection notice, the conduct at issue here implicitly declared that Defendant Westhill was licensed to collect in Maryland. In executing a settlement agreement to collect the debt, it necessarily conveyed that it was legally able to do so. Because Defendant Westhill was not, its actions constitute false representations.

Moreover, those representations were materially misleading—they would have affected the least sophisticated consumer's decision-making regarding the debt, as the consumer might not have entered into a settlement agreement with or made payments to an unlicensed collector. *See, e.g.*, *Radaj*, 2006 WL 2620394, at *4 (finding false statements of licensure materially misleading because they suggested that the collector had "been approved the state, thereby enhancing in the mind of the unsophisticated consumer [the debt collector]'s legitimacy and

19

power to collect the debt"). Additionally, as Plaintiff asserts, ECF No. 17-1 at 11, its attempts to enter into a settlement agreement and collect debt without a proper license may have cast doubt onto Defendant Westhill's other representations—namely, that it had authority to collect the debt. Thus, while the Court follows others in this district in declining to find "that any violation of state law, no matter how trivial, constitutes a *per se* violation of the FDCPA," *Bradshaw*, 765 F. Supp. 2d at 729, because the conduct here affirmatively and materially misrepresented the defendant's status as a licensed collector, it violates §§ 1692e and 1692e(10), providing an additional basis for entering summary judgment in Plaintiff's favor as to liability on Count 3.

## IV. CONCLUSION

For the foregoing reasons, Plaintiff's Motion for Partial Summary Judgment and Plaintiff's Motion for Leave are granted, and Defendant's Cross-Motion for Partial Summary Judgment is denied. A separate Order shall issue.

Date: March 24, 2021      ___/s/_____
                          GEORGE J. HAZEL
                          United States District Judge