IN THE UNITED STATES DISTRICT COURT
<u>FOR THE DISTRICT OF MARYLAND</u>
*Southern Division*

| | |
|---|---|
| **DIANA CAROLINA VALLE,**     \*  | |
| Plaintiff, | |
| \* | |
| v. | Case No.: GJH-19-2304 |
| \* | |
| **WESTHILL EXCHANGE, LLC,** *et. al.*, | |
| Defendants.     \* | |
| \* | |

\*     \*     \*     \*     \*     \*     \*     \*     \*     \*     \*     \*     \*

**<u>MEMORANDUM OPINION</u>**

In this consumer protection action, Plaintiff Diana Carolina Valle brought claims under the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692 *et seq.*, and related Maryland state laws against Defendants Westhill Exchange, LLC, and NCB Management Services, Inc. ECF No. 1. NCB was voluntarily dismissed from the case after settling with Plaintiff. ECF No. 16. On March 24, 2021, this Court granted Plaintiff summary judgment on her FDCPA claim against Westhill. ECF No. 25. This action was set for trial, but the parties requested that the Court remove the trial from the calendar because they were in the midst of settlement negotiations. ECF No. 36. On November 8, 2021, Westhill filed a Motion in Limine to determine the applicability of the "one satisfaction rule" and to compel disclosure of the settlement agreement between Plaintiff and NCB. ECF No. 38. As explained below, the Court has determined that the "one satisfaction rule" would not apply to this action, and the Motion to Compel is therefore denied.

I.  **BACKGROUND**

The Court will only discuss the factual and procedural details necessary to resolve the present motion. A complete discussion of the factual and procedural background of this case can be found in the Court's prior opinion granting summary judgment to Plaintiff on the FDCPA claim. *See* ECF No. 24. In October 2017, Plaintiff, a resident of Maryland, took out a payday loan of $2,072.18 from the Republican Bank & Trust Company ("RB&T"), trading as Elastic. *Id.* at 1.[1] Plaintiff was unable to make payments and went into default on her loan. *Id.* Defendant Westhill is a debt collection company. *Id.* On April 18, 2018, Westhill entered into an agreement with ARI Associates to collect on 52 loan accounts that ARI had purchased from RB&T, including Plaintiff's payday loan. *Id.* Westhill was not licensed to collect debt in Maryland. *Id.* at 14. On May 4, 2018, Plaintiff entered into a debt settlement agreement with Westhill. *Id.* at 3. The parties agreed that Plaintiff would pay $1,444.45 in monthly installments beginning on May 12, 2018. *Id.* Plaintiff timely made payments under this plan.

In June 2018, Plaintiff received a call from NCB demanding payment of the same loan. *Id.* at 3. NCB claimed that it had purchased her debt from RB&T and that Plaintiff actually owed payments to NCB. *Id.* Plaintiff demanded proof that NCB was entitled to collect on the loan. *Id.* On August 14, 2018, Plaintiff received an email stating that RB&T had sold her debt to NCB. *Id.* at 4. NCB called Plaintiff again in December 2018 to demand payment of the loan. *Id.* On February 17, 2019, Plaintiff requested validation from Westhill that it owned her debt. *Id.* On February 19, 2019, Westhill's president told Plaintiff that "[w]e are working the debt on contingency . . . but I can send you the verification." *Id.* On March 13, 2019 and April 1, 2019, Plaintiff again requested verification from Westhill. *Id.* Westhill's president responded on April

---

[1] Pin cites to documents filed on the Court's electronic filing system (CM/ECF) refer to the page numbers generated by that system.

4, 2019, stating, "[w]e spoke to our client and they said that the contract is still pending in their system, but the moment they get it they have informed us that they will mail it directly to you . . . If you don't have it in a couple of weeks, please let me know." *Id.* at 4.

Plaintiff then received a letter from NCB containing validation that it owned her loan. *Id.* Plaintiff informed Westhill, and Westhill's president apologized, saying, "I am sorry this is dragging on so long, if we cannot get resolution shortly, I will seek to just refund you on this account and forward everything back to our client." *Id.* On April 2, 2019, Plaintiff finished paying the debt to Westhill. *Id.* She received a release of liability informing her that the account was closed.

Plaintiff filed a lawsuit against both Westhill and NCB on August 12, 2019. ECF No. 1. Plaintiff requested declaratory judgment that she does not owe any debt with respect to the RB&T account. *Id.* ¶ 64. Plaintiff also alleged several violations of the FDCPA, 15 U.S.C. §§ 1692 *et seq.*, against both Defendants. *Id.* ¶¶ 70, 74. Plaintiff also alleged violations of the Maryland Consumer Debt Collection Act ("MCDCA"), Md. Code Ann., Com. L. § 14-201 *et seq.*, and the Maryland Consumer Protection Act ("MCPA"), Md. Code Ann., Com. L. § 13-301 *et seq.*, against Westhill. *Id.* ¶¶ 78, 83. Plaintiff requested compensatory damages and attorneys' fees for all claims and statutory damages for the FDCPA claim. *Id.* The parties began discovery. *Id.* at 5. Plaintiff then voluntarily dismissed Defendant NCB from the action pursuant to a settlement agreement. ECF No. 16.

On March 24, 2021, this Court granted Plaintiff's Motion for Partial Summary Judgment as to the FDCPA claim against Westhill. ECF No. 25. This Court found that Plaintiff established liability under 15 U.S.C. § 1692(e) on two theories: that Westhill had made false and misleading

representations that it had the authority to collect the debt and that Westhill had made misrepresentations that it had the ability to collect debt in Maryland. *See* ECF No. 24 at 12, 14.

The Court scheduled a jury trial. ECF No. 27. At the pre-trial conference, the parties asked the Court to remove the trial from the calendar because they were negotiating a settlement. *See* ECF No. 36. The parties informed the Court that a ruling on whether the "one satisfaction rule" would result in the complete or partial satisfaction of any judgment entered against Westhill would aid the parties in settlement. This Court ordered the parties to brief the issue.

On November 8, 2021, Westhill filed this motion, arguing that the "one satisfaction rule" would result in the partial or complete satisfaction of any judgment the Court would enter against Westhill. *See* ECF No. 38-1. Westhill also requested that this Court enter an order compelling Plaintiff to disclose the amount of her settlement with NCB.[2] Plaintiff filed a response in opposition on November 22, 2021. ECF No. 39. Westhill then filed a reply. ECF No. 40.

## II.     DISCUSSION

In the Motion, Westhill asks the Court to determine the applicability of the "one satisfaction" rule and to compel disclosure of the amount of the settlement between Plaintiff and NCB. ECF No. 38. Essentially, both issues point to the same question: whether the "one satisfaction rule" applies such that Westhill would be entitled to a setoff in damages. *See, e.g.*, *Beuster v. Equifax Info. Servs.*, No. 2005-cv-2816-DKC, 2006 WL 8456998, at *3 (D. Md. Sept. 1, 2006) ("The details surrounding Plaintiff's settlements with the other parties may be relevant with regard to any possible setoff that Bank One may be entitled to and thus may become discoverable."). As explained below, the rule would not apply here, and the settlement amount is not relevant. Therefore, the Court will not compel Plaintiff to produce the settlement amount.

---

[2] The settlement agreement, with the amount redacted, has already been provided to Westhill. *See* ECF No. 38, Exhibit B.

**A. One Satisfaction Rule**

"The 'one satisfaction rule' operates to 'reduce a plaintiff's recovery against a nonsettling defendant in order to ensure that the plaintiff does not secure more than necessary to compensate him for his loss.'" *Chisholm v. UHP Projects, Inc.*, 205 F.3d 731, 735 (4th Cir. 2000) (quoting *McDermott, Inc. v. AmClyde*, 511 U.S. 202, 218 (1994)). "The one satisfaction rule is grounded in 'the general principle that a plaintiff is entitled to but one compensation for her loss and that satisfaction of her claim prevents further action against another for the same damages.'" *Dowling v. A.R.T. Inst. of Washington, Inc.*, 372 F. Supp. 3d 274, 283 (D. Md. 2019) (quoting *Underwood-Gary v. Mathews*, 366 Md. 660, 667 (2001)).

Plaintiff has requested compensatory damages and reasonable attorneys' fees under the FDCPA and Maryland state laws. She has also requested FDCPA statutory damages.[3] Westhill argues that because Plaintiff's claims against both defendants were based on the same statutes, occurred around the same time, and relate to the same debt, Plaintiff alleges a single, indivisible harm. Plaintiff argues that the rule does not apply to FDCPA claims and that Westhill's wrongful conduct was separately harmful from NCB's conduct. This Court need not reach whether the one satisfaction rule can ever apply to a FDCPA claim because it finds that, in this factual scenario, the Plaintiff did not suffer a single, indivisible harm for which Westhill would be entitled to an offset in damages.[4]

---

[3] "Debt collectors that violate the FDCPA are liable to the debtor for actual damages, costs, and reasonable attorney's fees." *Russell v. Absolute Collection Servs., Inc.*, 763 F.3d 385, 389 (4th Cir. 2014). "The FDCPA also provides the potential for statutory damages up to $1,000 subject to the district court's discretion." *Id.* "Actual damages may include emotional damages, which though they 'may be slight . . . are nonetheless viable.'" *Best v. Fed. Nat'l Mortg. Ass'n*, 450 F. Supp. 3d 606, 634 (D. Md. 2020) (quoting *Ademiluyi v. PennyMac Mortg. Inv. Tr. Holdings I, LLC*, 929 F. Supp. 2d 502, 536 (D. Md. 2013)).

[4] In a similar case, the Fourth Circuit noted that "[a]rguably, the 'one satisfaction rule' does not even apply to [Fair Credit Reporting Act] claims" but "[w]e need not reach this question in light of our holding that the injury caused by Equifax is divisible from the other injuries Sloane suffered." *Sloane v. Equifax Info. Servs., LLC*, 510 F.3d 495, 501 n.2 (4th Cir. 2007).

"The essential requirement for the 'one satisfaction rule' is that the amounts recovered by settlement and the judgment must represent common damages arising from a single, indivisible harm." *Chisholm*, 205 F.3d at 737. The one satisfaction rule does not apply when the plaintiff has suffered separate injuries by different defendants—even when a non-settling defendant's harmful conduct relates to and overlaps with the harmful conduct of the settling defendant. *See Sloane v. Equifax Info. Servs., LLC*, 510 F.3d 495, 501 (4th Cir. 2007). Thus, in *Sloane*, the Fourth Circuit refused to apply the "one satisfaction rule" when a plaintiff alleged Fair Credit Reporting Act violations against three different credit reporting agencies, even though the violations all stemmed from the same instance of identity theft against the plaintiff. *Id.* "[Plaintiff] provided credible evidence that her emotional and economic damages resulted from separate acts by separate parties. She did not attempt to hold any of the credit reporting agencies responsible for damages arising from either the identity theft itself or the initial inaccuracies that the theft generated in her credit reports." *Id.*

Here, Plaintiff's claimed damages also stem from separate acts by separate parties. First, the defendants engaged in separately harmful conduct. Plaintiff has established Westhill's liability under the FDCPA for collecting on debt it did not own and for making false representations as to its authority to collect debt in Maryland. *See* 15 U.S.C. § 1692(e).[5] In contrast, Plaintiff alleged that NCB engaged in behavior prohibited even for a rightful owner of the debt—i.e., "by threatening to take action that could not legally be taken or which was not intended to be taken" and by "by threatening to communicate personal credit information, which it knew or should have known was false[.]" ECF No. 1 ¶¶ 70, 71; *see also* 15 U.S.C. §§

---

[5] A violation of the FDCPA is a violation of the MCDCA, Md. Code Ann., Com. L. § 14-202(11), and a violation of the MCDCA is a violation of the MCPA, Md. Code Ann., Com. L. § 13-301(14)(iii).

1692(e)(5), (8). Plaintiff would have been injured by Westhill's conduct regardless of whether NCB also acted harmfully.

Second, while there were some overlapping incidents with the two debt collectors, the incidents are still distinct enough to plausibly lead to separate harms. Plaintiff's communications with the debt collectors were always separate. NCB and Westhill never worked jointly nor communicated with Plaintiff jointly. Plaintiff began communicating with Westhill weeks before NCB first reached out to her. *See* ECF No. 24 at 3. Plaintiff struggled with getting Westhill to respond to her requests for validation via email. *Id.* Separately, she received collections calls from NCB. *Id.* Plaintiff has described suffering "anxiety attacks" after learning later that, after already starting on Westhill's payment plan, she may be paying off debt to the wrong party. ECF No. 38-2 at 5. In contrast, Plaintiff described fear of NCB's collections phone calls and NCB's threats to affect her credit. *Id.* at 4.

Much like in *Sloane*, Plaintiff claims "discrete injuries independent of those caused by the other" defendant. 510 F.3d at 501 (While "some of Suzanne's interactions with Equifax overlapped with exchange with other credit reporting agencies[,]" Suzanne's "encounters with Equifax both predate and postdate these other exchanges" and "the inaccuracies in Equifax's credit reports caused Suzanne discrete injuries independent of those caused by the other credit reporting agencies."). The harm is thus not a "single, indivisible" harm. *See, e.g.*, *Alston v. Wells Fargo Bank*, No. 12-cv-03671-AW, 2013 WL 990416, at *7 (D. Md. Mar. 12, 2013) ("The *Sloane* court held that the 'one satisfaction rule' does not apply where a plaintiff pursuing a FCRA claim provides credible evidence that his damages result from separate acts by separate parties. Here, Defendant does not seem to dispute that the other lawsuits involved different defendants. Furthermore, . . . it is plausible that the alleged damages flowed, at least in part, from

separate acts."); *Pennington v. Midland Credit Mgmt., Inc.*, 2010 WL 3187955, at *1 (E.D. Va. Aug. 9, 2010) ("[Defendant] fails to show that the acts and injuries are the same. To the contrary, it appears the acts are separate and the injuries are distinct.").

In addition, the Fourth Circuit's analysis of the FDCPA supports this finding of separate acts and separate harms. The Fourth Circuit recently noted that "nothing in the FDCPA suggests that 'similar' violations should be grouped together and treated as a single claim for purposes of the FDCPA's statute of limitations. To the contrary, we long have held that a 'separate violation' of the FDCPA occurs 'every time' an improper communication, threat, or misrepresentation is made." *Bender v. Elmore & Throop, P.C.*, 963 F.3d 403, 407 (4th Cir. 2020) (quoting *United States v. Nat'l Fin. Servs., Inc.*, 98 F.3d 131, 141 (4th Cir. 1996)). This Court has also highlighted that the "FDCPA seeks 'to eliminate abusive debt collection practices by debt collectors.' The Act 'is a strict liability statute and a consumer only has to prove one violation to trigger liability.'" *Long v. Pendrick Cap. Partners II, LLC*, 374 F. Supp. 3d 515, 531 (D. Md. 2019) (quoting *Akalwadi v. Risk Mgmt. Alts., Inc.*, 336 F. Supp. 2d 492, 500 (D. Md. 2004)); *see also Best v. Fed. Nat'l Mortg. Ass'n*, 450 F. Supp. 3d 606, 628 (D. Md. 2020) ("The plain message sent by the Fourth Circuit in describing the FDCPA's reach is that courts should consider it to be broad and expansive."). Therefore, "one satisfaction rule" does not apply here, and Westhill would not be entitled to any offset in damages.

### B. Settlement Agreement

"In this Circuit, district courts 'enjoy nearly unfettered discretion to control the timing and scope of discovery[.]'" *Ashland Facility Operations, LLC v. N.L.R.B.*, 701 F.3d 983, 994 (4th Cir. 2012) (quoting *Hinkle v. City of Clarksburg, W. Va.*, 81 F.3d 416, 426 (4th Cir. 1996)); *see also Cook v. Howard*, 484 F. App'x 805, 812 (4th Cir. 2012) (observing that "[d]istrict courts

are afforded broad discretion with respect to discovery"). "Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case[.]" Fed. R. Civ. P. 26(b)(1). "The purpose of discovery is to provide a mechanism for making relevant information available to the litigants." *Id.* (citing Advisory Committee's notes, 1983 Amendment).

Here, Westhill seeks to know the dollar amount of Plaintiff's settlement with NCB. As discussed above, the "one satisfaction rule" does not apply. Further, "Plaintiff settled with NCB for a broad dollar amount, covering all of NCB's wrongdoing and disposing of claims for attorneys' fees as well as for statutory and actual damages." ECF No. 39 at 7. The amount of the settlement agreement is therefore not relevant to any defense Westhill may have, and it would not lead to the discovery of relevant information. Thus, this Court denies the motion to compel it. *See, e.g.*, *Pennington*, 2010 WL 3187955, at *2 (denying a motion to compel because "the settlement agreements contain no admissions of liability, no breakdown of damages, and no reference to any specific statutory violations. As such, the one satisfaction rule, even assuming its applicability, does not support a conclusion that the agreements are relevant or would lead to the discovery of relevant material.").

### III. CONCLUSION

For the reasons discussed, the Court finds that the "one satisfaction rule" is inapplicable and the settlement agreement amount is not relevant. The Motion to Compel is denied. A separate Order follows.

Dated: December 21, 2021  /s/
GEORGE J. HAZEL
United States District Judge